UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

EDWIN QUILL SAMOL,
Petitioner,
v.
JEREMY CASEY, Imperial Regional Detention Facility; et al.,
Respondents.

Case No.: 26-cv-5487-BJC-DEB

**ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

On September 24, 2026, Petitioner Edwin Quill Samol filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 8 U.S.C. § 2241. ECF No. 1. On October 1, 2026, Respondents filed a Return. ECF No. 7. On October 9, 2026, Petitioner filed a Traverse. ECF No. 8. For the reasons set forth below, the Court **GRANTS** the Petition (ECF No. 1) and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a citizen of Guatemala, entered the United States in approximately 2018 when he was ten years old. ECF No. 1 at ¶ 7. On March 5, 2024, United Stated Border Patrol encountered Petitioner and issued him a Form I–862 Notice to Appear. ECF No. 7-2 at 3. Petitioner was then transferred to a Family Unit on March 8, 2024. *Id*. On March

25, 2024, Petitioner was released on Order of Recognizance, and he was scheduled for an individual hearing with the Executive Office for Immigration on December 4, 2026. *Id*.

Before that individual hearing occurred, Petitioner was detained on July 28, 2026 by Immigrations and Customs Enforcement ("ICE"), without a warrant, as he was walking to work. ECF No. 1 at ¶ 31. Petitioner was originally detained at the Delaney Hall Detention Facility, but he has since been transferred to the Imperial Regional Detention Facility. *Id*. It is undisputed that Petitioner has no criminal history. *Id*. at ¶ 34; *see also* ECF No. 7-2 at 3. Petitioner also alleges that he has "substantial familial ties in the United States and a solid work history[.]" ECF No. 1 at ¶ 34.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id*.

## III. DISCUSSION

Petitioner alleges that his detention is subject to and in violation of 8 U.S.C. § 1226. *See* ECF No. 1 at ¶¶ 50–64. Specifically, Petitioner contends that his warrantless arrest was in violation of 8 U.S.C. § 1226, which provides that a noncitizen in the interior of the United States may only be arrested and detained "[o]n a warrant issued by the Attorney General," and that Respondents failed to demonstrate their warrantless arrest was permissible under 8 U.S.C. § 1357(a). *Id*. at ¶¶ 72, 75–80; *see also* ECF No. 8 at 6–9. Petitioner also argues that Respondents' failure to comply with 8 U.S.C. § 1226 violated his right to due process. ECF No. 1 at ¶¶ 81–95. Under either claim, Petitioner argues that

his continued detention is unlawful and requests immediate release or, in the alternative, a bond hearing. *See id*. at 27–28. In their return, Respondents concede Petitioner is subject to detention under 8 U.S.C. § 1226 but nonetheless argue that Petitioner is lawfully detained. ECF No. 7 at 2. Respondents also claim that the Petition is moot because Petitioner declined a bond hearing before an immigration judge. *Id*. Despite admitting Petitioner was arrested without a warrant, Respondents oppose Petitioner's warrantless arrest claim because a warrant was issued within 48 hours of his arrest. *Id*; *see also* ECF No. 7-3 at 3.[1]

**A. Petitioner's Warrantless Arrest Violated Section 1226**

There is no dispute that Petitioner's detention is governed by 8 U.S.C. § 1226. *See* ECF No. 1 at ¶¶ 72, 75–80; ECF No. 7 at 2. Section 1226(a) only permits the arrest and detention of a noncitizen pending removal proceedings "[o]n a warrant issued by the Attorney General." *See J.A.C.P. v. Wofford*, 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) (finding the "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)") (quoting *Chogglo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025)). However, under 8 U.S.C. § 1357(a), immigration officers may execute warrantless arrests when specific conditions are met. *See Cayetano-Castillo v. Warden*, 2026 WL 3270170, at *3 (S.D. Cal. Oct. 30, 2026). Section 1357 provides that:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power *without warrant* ... to arrest any [noncitizen] who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any [noncitizen] in the United States, *if he has reason to*

[1] In a footnote, Respondents argue that "[s]hould the Court grant the petition" based on Petitioner's warrantless arrest, the Court need not address Petitioner's due process challenge. ECF No. 7 at 3, n.3. Although it is true courts "are not required to make findings on issues the decision of which is unnecessary to the results they reach," *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976), the Court finds it necessary to resolve both Petitioner's statutory and constitutional challenges to his detention.

> *believe* that the [noncitizen] so arrested is in the United States in *violation* of any such law or regulation and *is likely to escape before a warrant* can be obtained for his arrest but the [noncitizen] arrested shall be taken *without unnecessary delay* for examination before an officer of the Service having authority to examine [noncitizens] as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2) (emphasis added). "The 'reason to believe' requirement is the equivalent of 'the constitutional requirement of probable cause.'" *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026) (quoting *Tejeda-Mata v. Immigr. Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980)). Following a warrantless arrest, an examination of the noncitizen must follow "without unnecessary delay." 8 U.S.C. § 1357(a)(2). The procedural regulations governing the post-arrest examination are laid out in 8 C.F.R. § 287.3, which requires "an officer other than the arresting officer" to make "a determination … within 48 hours of the arrest, except in the event of an emergency" as to "whether the [noncitizen] will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest … will be issued." 8 C.F.R. § 287.3(a), (d).

In short, taking 8 U.S.C. §§ 1226, 1357, and 8 C.F.R. § 287 together, a warrant is required to arrest a noncitizen already in the United States *unless* the immigration officer has probable cause to believe that (1) there is a noncitizen in his presence in violation of the law *and* (2) is likely to escape before a warrant can be obtained; if a warrantless arrest is made, then there must be a separate determination within 48 hours of the arrest, barring any emergency or extraordinary circumstances, as to whether the noncitizen will be released or detained.

It is undisputed that, on July 28, 2026, Petitioner was arrested without a warrant. *See* ECF No. 1 at ¶¶ 2, 6, 31; ECF No. 7-3 at 2 (warrant dated July 29, 2026);[2] ECF No. 8

---

[2] The Court notes a discrepancy in Respondents' return and their Exhibit 3. Respondents' return indicates that a warrant for arrest of the Petitioner was "executed and served on

at 2, 6-8. Respondents attempt to justify the validity of Petitioner's warrantless arrest by pointing to the post-hoc issuance of a warrant. *See* ECF No. 7 at 3; ECF No. 7-3 at 2. Numerous courts in the Ninth Circuit "have found that a warrant issued within the 48-hour window does not cure an *unlawful* warrantless arrest—*i.e.*, a warrantless arrest made without adhering to 8 U.S.C. § 1357(a)(2)." *Cayetano-Castillo*, 2026 WL 3270170, at *4 (emphasis in original); *see also Chivalan v. LaRose*, 2026 WL 2546609, at *4 (S.D. Cal. Aug. 27, 2026) (issuing warrant the same day as detention did not cure warrantless arrest); *Diaz Escalante v. LaRose*, 2026 WL 2364792, at *3–4 (S.D. Cal. Aug. 14, 2026) (despite issuing the warrant the day after his detention, "Petitioner's detention without a warrant violated Section 1357(a)(2) and is grounds for immediate release"); *M-J-M-A*, 822 F. Supp 3d at 1179 (concluding that "an arrest must be based on information known to the officers *at the time of the arrest* and particular to the person to be arrested") (emphasis added)). This Court agrees. The arrest warrant, issued the day after Petitioner's arrest, does not, by itself, cure Respondents' unlawful warrantless arrest.

Accordingly, Petitioner's warrantless arrest is only permissible if it meets the specific conditions under Section 1357(a). As noted above, Section 1357(a) allows a warrantless arrest where the officer has reason to believe there is a noncitizen in his presence that is in "violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2) (emphasis added). Respondents fail to allege that Petitioner's warrantless arrest was made pursuant to any of these conditions. ECF No. 7 at 3 (Respondents concede they have "no further information concerning … Petitioner's arrest"). In doing so, Respondents fail to demonstrate that an ICE officer had any reason to believe Petitioner was a noncitizen in violation of the law

---

September 17, 2026," ECF No. 7 at 3, whereas Respondents' Exhibit 3 provides a copy of the actual arrest warrant, which is dated July 28, 2026. ECF No. 7-3 at 2. The Court relies on the date in Exhibit 3. The Court's analysis, using either date, however, would be the same.

and was likely to escape before a warrant could be issued prior to arresting and detaining him. Indeed, Petitioner, an 18-year-old with no criminal history, was detained by ICE officers "as he was walking on the street toward his place of employment." ECF No. 1 at ¶ 31. There is nothing in the record to suggest Petitioner participated in any unlawful or suspicious activity prior to his arrest or that he was likely to escape before issuance of a warrant.

Petitioner's warrantless arrest, therefore, violates 8 U.S.C. §§ 1226(a) and 1357(a), which justifies his immediate release. *See Regino Valle v. Mullin*, 2026 WL 2076024, at *2 (S.D. Cal. July 17, 2026) (ordering immediate release for unlawful warrantless arrest); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release") (internal citation omitted).

**B. Respondents Deprived Petitioner the Right to Due Process**

The Fifth Amendment guarantees that "[n]o person shall be … deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This right extends to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 681 (2001); *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.") (citation omitted). Accordingly, once a noncitizen has "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law" occur. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

Petitioner entered the United States without inspection in 2018. ECF No. 1 at ¶ 7. However, Petitioner encountered United States Border Patrol on March 5, 2025. *See* ECF No. 7-2 at 3. At that time, Petitioner was issued a Form I-862 Notice to Appear, and on March 25, 2024, Petitioner was released on Order of Recognizance during his removal proceedings. *Id.* Despite releasing Petitioner, Respondents argue that 8 U.S.C. § 1226

permits them to arrest and detain Petitioner without notice or an opportunity to be heard while his removal proceedings are still pending. ECF No. 7 at 2. This Court disagrees.

"Courts have recognized that typically, the term 'released on their own recognizance' … refers to conditional parole under 8 U.S.C. § 1226(a)." *Wang v. LaRose*, 2026 WL 788171, at *2 (S.D. Cal. Mar. 20, 2026); *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)"). Accordingly, a noncitizen released on his own recognizance has a "constitutionally protected liberty interest" in his freedom from detention. *See, e.g.*, *R.N.G. v. Semaia*, 838 F. Supp. 3d 1035, 1044–45 (C.D. Cal. 2026) (collecting cases). Therefore, Petitioner "gained a liberty interest in [his] continued freedom when DHS elected to release [him] on [his] own recognizance under section 1226(a), which implied a promise that [he] would not be re-detained so long as [he] abided by the terms of their release." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 934 (N.D. Cal. 2025).

Upon a determination that Petitioner is owed due process, "the outstanding question is 'what process is due.'" *Id.* at 932 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Due process proceedings generally "require[] some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process…."). To determine whether procedures are constitutionally sufficient, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). This test requires the Court to weigh: (1) "the private interest that will be affected by the official action;" (2) the "risk of erroneous deprivation of such interest through the procedures used;" and (3) "the [g]overnment's interest[.]" *Id.* at 334–35.

After weighing these three factors, the Court finds that Respondents' detention of Petitioner, all without notice or an opportunity to be heard, deprived Petitioner of due

process. First, as discussed, Petitioner gained a liberty interest in remaining free when he was released on his own recognizance. *See Valencia Zapata*, 801 F. Supp. 3d at 934. Second, the risk of an erroneous deprivation of Petitioner's liberty interest is high. When Petitioner was released on his own recognizance, "immigration officers necessarily determined that [he was] neither [a] flight risk nor danger[] to the community." *Id.* at 938. There is no indication that, two years later, Petitioner has become a flight risk or is a danger to the community. *See, e.g.*, ECF No. 1 at ¶ 34 (indicating Petitioner has no criminal record and also has "substantial familial ties in the United States and a solid work history"). Thus, regardless of Petitioner's "conditional parole" status, Respondents were required (but failed) to provide Petitioner with notice and an opportunity to be heard prior to his detention. *See Singh v. Archambeault*, 2026 WL 555589, at *2–3 (S.D. Cal. Feb. 27, 2026) (finding right to due process after being issued Order of Release on Recognizance). Third, Respondents failed to demonstrate (or even allege) that there was a significant interest in detaining Petitioner without providing adequate due process.

With all three *Mathews* factors weighing in Petitioner's favor, the Court finds that Petitioner was owed notice and an opportunity to be heard prior to his detention. He received neither. Petitioner's detention is, therefore, unlawful. *See, e.g.*, *Hernandez Dormuz v. Casey*, 2026 WL 2364777, at *2 (S.D. Cal. Aug. 14, 2026) (ordering immediate release where "prior grant of release under an Order of Recognizance raises a liberty interest for the petitioner and entitles the petitioner to due process," which he did not receive); *Kumar v. Divver*, 2026 WL 710574, at *2 (S.D. Cal. Mar. 13, 2026) ("[B]ecause Respondents detained Petitioner by revoking his order of release without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful.").[3]

---

[3] The Court rejects Respondents' belief that the Petition is moot because Petitioner denied a bond hearing before an immigration judge. *See* ECF No. 7 at 2. Petitioner's decision to deny a bond hearing does not render his Petition moot when the proper relief, under these

**CONCLUSION**

For the foregoing reasons, this Court **GRANTS** Petitioner's Petition for Habeas Corpus. ECF No. 1. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his pre-existing parole; and
2. Respondents are **ENJOINED AND RESTRAINED** from detaining Petitioner until either the government obtains a warrant under 8 U.S.C. § 1226(a) authorizing Petitioner's arrest or complies with the warrant exception under 8 U.S.C. § 1357(a), or the government provides Petitioner with notice of the reasons for revoking his conditional parole and a hearing to determine whether detention is warranted.

**IT IS SO ORDERED**.

Dated: November 6, 2026

Honorable Benjamin J. Cheeks
United States District Judge

circumstances, calls for his immediate release.